## TRENT v. GULF PACIFIC LINES.
### No. 1392.

District Court, S. D. Texas, at Galveston. July 31, 1930.

W. E. Price, of Galveston, Tex., for plaintiff.

Royston & Rayzor, of Galveston, Tex., for defendant.

HUTCHESON, District Judge.

This is a libel under section 594 U. S. Code Title 46 (46 USCA § 594) for one month's wages as compensation for wrongful discharge and under section 596 for double wages as penalty for failure to pay wages at the time of the discharge.

The substantial facts on which the case turns are without dispute. Libelant signed articles as cook on board the steamship Point Reyes at San Francisco. During the voyage a controversy arose between him and the chief engineer as to the temperature of the chillbox, the engineer blaming him for too frequent entry into it, and he blaming the engineer for not maintaining a freezing temperature.

As the result of the controversy the captain was called in. Upon his demanding the keys of the chillroom from libelant he was informed that the keys had been delivered to libelant by the port stewart at the port of San Francisco upon strict orders to deliver them to nobody, and that the master could not get the keys. That if the master interfered with his storeroom, he would go up and take charge of the bridge.

The master, instead of exerting his authority as he should have done, yielded the point, but determined to discharge the libelant. He endeavored to do so at New Orleans and at Houston without success, libelant refusing to leave the vessel, and finally at Galveston before the Shipping Commissioner he effected the discharge, tendering libelant his earned wages which he refused to receive. Later upon his refusal to leave the ship libelant was taken off by officers.

At the trial libelant still had the keys which had been the subject of the principal controversy.

In addition to this controversy, complaints and disagreement had existed throughout the voyage on account of the food, and on one occasion libelant and one of the mess boys had been involved in a difficulty on the ship.

There is no question but that whether animated by pure cantankerousness, or by that principle which sustained the man of whom it was written "He seen his duty and he done it," the cook defied the captain to relieve him of his symbols of authority, and that his conduct was such that he was subject to discipline.

Neither is there any question that, as the captain stated to the Commissioner at Galveston, the situation had gotten to such a point that either the captain or the cook had to leave the ship. It does not follow, how-

ever, that it was the cook, and not the captain, that ought to have left the ship.

It seems entirely plain to me that the captain wholly failed as captain to master his ship and exert there the authority which his position had invested him with, and that it was his failure to maintain discipline, and not the action of the cook, an old negro 65 years old, which was the proximate cause of the trouble into which they all fell.

The authorities are ample to the effect that by the articles the ship is bound to the men, just as the men are bound to the ship, and that it is not for any little infraction of discipline that a discharge may be effected. The Superior (D. C.) 22 F. 927; The Idle-hour (D. C.) 63 F. 1018; The Topgallant (D. C.) 84 F. 356.

In the light of these authorities it is my opinion that libelant was discharged "without fault on his part justifying such discharge." That he was discharged without his consent the record affirmatively shows. In fact, the final separation of ship and man came only through ejection.

The discharge being wrongful, section 594, 46 USCA, fixes his recovery and determines his compensation to be wages duly earned and tendered him but not accepted by him, and, in addition, one month's wages. U. S. Steel Products Co. v. Adams, 275 U. S. 388, 48 S. Ct. 162, 72 L. Ed. 326.

On that branch of his case which invokes section 596, 46 USCA, I think it clear that libelant must fail, for, although I have found that he was discharged without fault on his part justifying such discharge, I must also find that, not only was there no refusal to pay the wages at the time of the discharge, but they were by the master thrust upon libelant in the presence of the Commissioner in Galveston and by libelant refused, and that the condition of the statute which makes the penalty operative, that the master shall refuse without sufficient cause to pay the wages, has never become operative.

The libelant at the time of his discharge insisted not upon the payment of wages, but only upon his remaining as cook on the return voyage to San Francisco, so for the wrongful discharge, one month's wages, is the full compensation allowed. U. S. Steel Products Co. v. Adams, 275 U. S. 388, 48 S. Ct. 162, 72 L. Ed. 326. The double penalty only arises for the wrongful failure to pay wages.

No such failure here arises. Let the libelant have his decree for earned wages and one month more.